UNITED STATES

v.

**William T. WRENN, 066 58 8138, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM No. 92 0461.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 12 Dec. 1991.

Decided 22 March 1993.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

Col J.R. Roe, USMCR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before LARSON, C.J., and STRICKLAND and ORR, Senior Judges.

LARSON, Chief Judge:

Convicted by special court-martial, pursuant to his pleas, of attempted larceny, willful disobedience of orders, larceny and wrongfully obtaining services through false pretenses in violation of Articles 80, 91, 121 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 891, 921 and 934, the appellant was sentenced by military judge sitting alone to confinement for 6 months, forfeitures of $502.00 pay per month for 6 months, reduction to pay grade E–1 and a bad-conduct discharge. In this appeal, he raises 7 issues.[1] Four of

1. I. THE AMENDMENT TO THE SPECIFICATION OF CHARGE I WAS NOT PROPERLY SERVED ON APPELLANT AND, EVEN WITH THE AMENDMENT, FAILS TO STATE AN OFFENSE.

II. APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 3 OF CHARGE III WAS IMPROVIDENT WHERE THE LARCENY WAS BASED ON A THEORY OF WRONGFUL WITHHOLDING AND THE PROVIDENCE INQUIRY FAILED TO ESTABLISH A FIDUCIARY RELATIONSHIP BETWEEN APPELLANT AND THE ALLEGED VICTIM.

III. THE MILITARY JUDGE COMMITTED PLAIN ERROR IN ADMITTING INTO EVIDENCE A RECORD OF NONJUDICIAL PUNISHMENT WHERE THE OFFENSES WHICH WERE THE SUBJECT OF THE NONJUDICIAL PUNISHMENT WERE COMMITTED MORE THAN 2 YEARS PRIOR TO THE COMMISSION OF ANY OF THE OFFENSES OF WHICH APPELLANT WAS CONVICTED, IN VIOLATION OF JAGMAN SECTION 0141.

IV. THE ADMISSION WITHOUT OBJECTION OF ADMINISTRATIVE ENTRIES REFLECTING THAT APPELLANT HAD COMMITTED MISCONDUCT NOT CHARGED WAS EITHER PLAIN ERROR OR THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL.

V. THE PROVISION IN THE PRETRIAL AGREEMENT THAT REQUIRED APPELLANT, IN THE EVENT A BAD CONDUCT DISCHARGE WAS ADJUDGED, TO SUBMIT A REQUEST FOR "VOLUNTARY APPELLATE LEAVE IN RETURN FOR THE CONVENING AUTHORITY'S AGREEMENT TO SUSPEND CONFINEMENT VIOLATES PUBLIC POLICY AND APPELLANT'S 6TH AMENDMENT RIGHT TO COUNSEL.

VI. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. *BUT SEE UNITED STATES v. GRAF,* 32 M.J. 809 (N.M.C.M.R.1990), *PETITION GRANTED* 34 M.J. 169 (C.M.R. [sic] 1991). BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A KNOWING WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS

these merit discussion and, of those, one will require corrective action by this Court.

## I

The appellant's first assignment of error comes in two parts. He asserts that the specification under Charge I was improperly amended and, even as amended, it fails to state an offense. It is clear from the charge sheet that the word "wrongfully" was added by pen to the original version so that, as amended, the specification reads:

> In that Lance Corporal William T. WRENN, U.S. Marine Corps ... did, at Camp Lejeune, North Carolina, on or about 15 November 1990, wrongfully attempt to purchase merchandise of a value of about $730.00 from the Army/Air Force Exchange, Dallas, Texas by using a Visa credit card number, the property of Lance Corporal J. CAVIEDES, U.S. Marine Corps.

However, there is no mention of this major amendment in the record of trial.

 The specification, even as amended, is not a model to emulate.[2] In particular, it is a mystery to us why the original drafter of the specification chose the benign word "purchase" over the time-tested word "steal" to describe the accused's criminal conduct. Nevertheless, the appellant pled guilty to this offense and did not challenge the specification at trial. Appellate courts view defective specifications with maximum liberality when an accused pleads guilty to the offense and only challenges the specification for the first time on appeal. *United States v. Bryant*, 30 M.J. 72 (C.M.A.1990); *United States v. Watkins*, 21 M.J. 208 (C.M.A.1986). To withstand the challenge on appeal, a specification need only aver all elements by im-

plication. *Bryant.* Had the specification not been amended to add the word "wrongfully" we would find merit in the appellant's position. In that case, no word of criminality would exist and none could be reasonably inferred from words that simply allege the neutral act of attempting to buy merchandise with another's credit card.

This is not to say that the mere addition of the word "wrongfully" or a word of similar import, such as "unlawfully," will make criminal that which is obviously innocent. *United States v. Sadinsky*, 14 C.M.A. 563, 34 C.M.R. 343 (1964). The key to sufficiency is whether the specification (as amended) excludes all hypotheses of innocence. *United States v. Julius*, 8 C.M.A. 523, 25 C.M.R. 27 (1957). In this case, given the interpretive latitude sanctioned on appeal, one can reasonably infer from the word "wrongfully" that the appellant is accused of attempting to obtain property of a certain value from the Army/Air Force Exchange through the unauthorized use of another's credit card by falsely representing that it is his own or that he has the authority to use it. There is no reasonable hypothesis of innocence. Accordingly, we find that the specification is sufficient to allege the elements of the charged offense, either expressly or through fair implication. Manual for Courts–Martial, United States, 1984 (MCM), ¶¶ 4b, 46b, and 46c.

 We also find from the absence of any objection to the amendment at trial that either the specification was amended properly, or, in the alternative, the appellant waived his right to object to trial on unsworn and unpreferred charges. Rule

---

NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. [Footnote omitted.]
VII. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE APPELLANT'S MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. *SEE GENERALLY* U.S. CONST. ART. II, § 2, CL. 2; *FREYTAG v. COMMISSIONER OF INTERNAL REVENUE,* —— U.S. ——, 111 S.CT. 2631, 115 L.Ed.2d 764 (1991); *BUT SEE UNITED STATES v. COFFMAN,* 35 M.J. 591 (N.M.C.M.R.1992). [Footnote omitted.] BECAUSE THIS ERROR IS

JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

2. Even the amendment could have been accomplished with more precision. "Wrongfully" should have been added before the word "purchase" rather than before "attempt" to more accurately describe the conduct alleged against the appellant. Nevertheless, for the reasons stated in the main text, we find that this flaw is not fatal to the sufficiency of the specification.

for Courts–Martial (R.C.M.) 603(d). Finally, we reject the appellant's contention that he was denied his statutory 3–day waiting period following service of the amended specification. Article 35, UCMJ, 10 U.S.C. § 835. There is no evidence of record that the specification was amended within 3 days of trial or that the appellant lodged an objection to trial on that basis.

## II

■ Specification 3 of Charge III alleges that the appellant stole $475.00 worth of merchandise belonging to the Gold Mine, a local retail store. During his inquiry into the providence of the appellant's guilty plea to that offense, the military judge determined that the appellant wrote a check for the amount of the merchandise, took possession of it and then refused to pay the store when he was notified that the check had been dishonored. The military judge accepted the plea to larceny based on the theory that the appellant wrongfully withheld the merchandise from the rightful owner by failing to return it when his check was dishonored. The appellant now mounts a legal attack on the providence of his pleas by stating that his actions do not amount to larceny by withholding as a matter of law because there was no fiduciary relationship between him and the Gold Mine. We agree.

The statutory offense of larceny under Article 121, UCMJ, 10 U.S.C. § 921 was intended to encompass only those traditional offenses of larceny, embezzlement and obtaining by false pretenses. *United States v. McFarland*, 8 C.M.A. 42, 23 C.M.R. 266 (1957); *United States v. Castillo*, 18 M.J. 590 (N.M.C.M.R.1984). Embezzlement, in particular, is now known in military law as wrongful withholding with intent permanently to appropriate. MCM, ¶ 46c(1)(a). This offense can be distinguished from other forms of larceny under Article 121 in that it requires that the embezzler come lawfully into the possession of the property of another and that there exist between the two a fiduciary relationship in which the embezzler holds the property for the benefit of the other. Without such a fiduciary relationship, there is no wrongful withholding under Article 121. *Castillo*, 18 M.J. at 596.[3] A fiduciary relationship does not arise passively from thin air. It is affirmatively created and built on trust and confidence. Central to its existence is a clear understanding of the respective rights of the two parties to title (*i.e.*, ownership), to possession and to the uses to which the property may be put. A fiduciary relationship is often (although not always) characterized by a duty to account for the property on demand as well as a duty not to convert it to a use for which it was not intended. *McFarland*, 23 C.M.R. at 270.

We see no such relationship between a retailer and buyer arising from an ordinary retail sale of merchandise, even one where payment is made by check. Such a sale is no more than a contract for purchase of goods in exchange for monetary consideration. Absent some particular understanding (*e.g.*, a "trial" period at home), title to the merchandise passes to the buyer when it is delivered to him. Uniform Commercial Code (UCC) § 2–401. It is a practical as well as a legal fiction to say that a fiduciary relationship is created when consideration for a retail sale is made by check such that the retailer retains ownership of the property until the check clears. For example, in that situation there is no understanding, express or implied, that the buyer has a duty to account for the merchandise from the time the check is tendered until the time it is honored or that he is restricted as to how he may use the merchandise.

---

**3.** *Castillo* found no such fiduciary relationship between a service member and the U.S. Government such that unlawful receipt of allowances would constitute wrongful withholding. Its continued vitality in view of *United States v. Antonelli*, 35 M.J. 122 (C.M.A.1992), is in doubt. In *Antonelli*, the Court of Military Appeals concluded, in effect, that a fiduciary relationship between these two parties may exist based upon a duty to account for housing allowances and a duty not to convert such allowances to an unauthorized use. 35 M.J. at 128. Nevertheless, the point in *Castillo* that such a relationship is still required to sustain a conviction for wrongful withholding remains well established in the law.

Payment by check is a conditional means of performance by the buyer (UCC § 2–511) and, upon its dishonor, the seller has certain contractual remedies. UCC §§ 2–703, 3–122. None of these includes an automatic restoration of ownership of the merchandise. In fact, unless the purchase was made on credit and the seller discovers that the buyer is insolvent, the seller does not even have an automatic right to reclaim the merchandise. UCC § 2–702(2). Normally, a dishonored check does no more than simply create a debt between the two parties that cannot itself be the subject of larceny under Article 121. *United States v. Mervine*, 26 M.J. 482 (C.M.A.1988). The debt may or may not create criminal liability for the bad check writer under Articles 123a and 134, UCMJ, 10 U.S.C. §§ 923a and 934. In any event, it does not retroactively create a fiduciary relationship between buyer and seller that would support a conviction for wrongful withholding under Article 121.

The appellant's plea to larceny through false pretenses might have been provident in this case had he obtained the merchandise with the intent to defraud at the outset. MCM, ¶ 46c. However, there is nothing in the record to indicate that he did. Therefore, this record cannot sustain a finding of guilty to the offense of larceny in any form.[4] We will set aside the finding of guilty and determine whether the sentence can be reassessed below.

## III

During the sentencing phase of this court-martial, the trial counsel, pursuant to R.C.M. 1001(b)(2), introduced evidence of two instances of nonjudicial punishment (NJP) under Article 15, UCMJ, 10 U.S.C. § 815. These appeared in the form of counseling entries from the appellant's service record book which referred to the NJPs as the basis for counseling the appel-

lant about his substandard behavior. In addition, the trial counsel introduced several other adverse counseling entries from the appellant's service record book, two of which are the subject of the appellant's fourth assignment of error. In one instance of NJP, the appellant was apparently punished for larceny of cigarettes sometime before 26 July 1988 and, in the other, he was apparently punished for a brief unauthorized absence in October 1988. No objection was made to these documents by the trial defense counsel and they were accepted into evidence and presumably considered by the military judge in his determination of an appropriate sentence.

 In his third assignment of error, the appellant now asserts that the two NJPs were inadmissible under the Manual of the Judge Advocate General (JAGMAN) § 0133, in that the two offenses for which the appellant received NJP both occurred more than 2 years before the commission of any offense of which he stands convicted. In addition, he argues that his counsel's failure to object at trial does not waive the error because the admission of these documents constitutes "plain error" under Military Rule of Evidence (M.R.E.) 103(d). It is clear that admission of these documents over objection would have violated JAGMAN § 0133. In so concluding, we reject the Government's argument that the service record counseling entries that refer to the instances of NJP are not subject to the 2–year rule because they are not formal "records of nonjudicial punishment." JAGMAN § 0133 does not specify the form of the "records of nonjudicial punishment" to which the 2–year rule applies. We read it to apply to any means authorized by departmental regulations to properly reflect the imposition of NJP. To do otherwise would sanction violation of the JAGMAN provision through the back door and would thereby defeat its obvious

---

4. The appellant did admit to the factual basis for a finding of guilty to dishonorable failure to maintain sufficient funds under Article 134, UCMJ, 10 U.S.C. § 934. However, we are not inclined to apply the doctrine in *United States v. Felty*, 12 M.J. 438 (C.M.A.1982), which allows us to affirm a guilty finding if the accused provi-

dently pleads to a closely-related offense. *United States v. Epps*, 25 M.J. 319 (C.M.A.1987). We do not believe that *Felty* was intended to extend this far where the gravamen of the charged offense is decidedly different from that to which the appellant admitted. *See United States v. Cornelius*, 29 M.J. 501 (A.C.M.R.1989).

intent and the sound policy behind it. The only real question here is whether the military judge committed "plain error" in admitting the NJPs.

A *per se* approach to plain error analysis is flawed. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Plain error must be more than just plain and obvious. It must be substantial and have unfair prejudicial impact. *United States v. Rice*, 33 M.J. 451 (C.M.A.1991). In *United States v. Dyke*, 16 M.J. 426 (C.M.A.1983), the Court of Military Appeals found the unopposed admission of a record of NJP that was deficient on its face to be plain error. Although the prejudicial effect of that record on the sentence was not discussed in detail in *Dyke*, the Court was persuaded that there was an appreciable risk that the trial court gave weight to it. *See also United States v. Elston*, 34 M.J. 1036 (N.M.C.M.R.1992), where this Court found no plain error in the admission of a record of NJP and emphasized the need to perform a case-by-case analysis to determine whether the presence of inadmissible evidence constitutes plain error.

In this case, although the appellant was sentenced to the jurisdictional maximum of a special court-martial, he stood convicted of serious offenses involving moral turpitude and willful defiance of an order. In addition, even disregarding the NJP entries, his record during his current enlistment showed no signs of rehabilitative potential. Considering these factors, we are convinced that the two stale records of NJP had no significant effect on the sentence. Accordingly, we find that plain error does not exist.

Finally, we find no error at all in the admission of the other two counseling entries that are the subject of the appellant's fourth assignment of error. The fact that these entries are adverse and specifically that they refer to uncharged misconduct does not make them inadmissible if they were prepared in accordance with applicable regulations and otherwise comply with R.C.M. 1001(b). *See United States v. Shepherd*, 30 M.J. 652 (A.F.C.M.R.1990).

The appellant made no objection at trial and does not allege on appeal that these entries do not comply with applicable regulations. Consequently, we presume regularity and find no error in their admission.

IV

In view of our treatment of the finding of guilty to specification 3 of Charge III, we must determine whether we can reassess the sentence pursuant to the guidance in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986) and *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). Considering the other serious offenses of which the appellant stands convicted (which would have added up to a maximum sentence of 11 years had the appellant been tried by general court-martial) and his otherwise poor record, we are convinced that the military judge would have arrived at the same sentence for the remaining offenses. Furthermore, we find the sentence as approved to be appropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Accordingly, the finding of guilty to specification 3 of Charge III is set aside and the remaining findings of guilty and the sentence, as approved below, are affirmed.

Senior Juges STRICKLAND and ORR concur.